**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JOHN W. COLVIN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-0669** |
| **ROBERT C. TANNER** | **SECTION "G" (4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I. Factual and Procedural Background

The petitioner, John W. Colvin ("Colvin"), appearing through counsel, is a convicted inmate incarcerated in the B.B. "Sixty" Rayburn Correctional Center in Angie, Louisiana.[2] On June 24, 2009, Colvin was charged by Bill of Information in Orleans Parish with six counts of theft in excess of $500.00.[3] Colvin initially entered a pleas of not guilty to each count on June 29, 2009.[4]

The record reflects that in the Fall of 2007 and the Spring of 2008, Colvin, a 63-year-old former elected state representative in Alabama, came to Louisiana and entered into a series of

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 5, Bill of Information, 6/24/09.

[4]St. Rec. Vol. 1 of 5, Minute Entry, 6/29/09.

construction contracts with homeowners in New Orleans who were attempting to rebuild after Hurricane Katrina.[5] Colvin held himself out as a licensed contractor doing business as Colvin Modular Homes, LLC. Louisiana law required Colvin to register with the Residential Building Contractors Subcommittee of the State Licensing Board for Contractors if he undertook home improvement contracting services.[6] Louisiana law also prohibited Colvin from operating without a certificate of registration issued by the Subcommittee, from making a material misrepresentation in the procurement of a residential building contract, or from making false representations that he was a state licensed general contractor.[7] However, information provided by Carl Bourke, a Residential Compliance Supervisor for the State Licensing Board for Contractors, indicated that Colvin was not then nor has he ever been a licensed contractor in Louisiana.

The contracts entered into with the victims named in the charges generally exceeded $100,000, had no completion dates, required the homeowners to secure insurance, and entailed substantial down payments to Colvin. In the majority of the six cases, the homeowners paid tens of thousands of dollars to Colvin with little or no work done. Brenda Turner paid Colvin a total of $40,000.00 for which he had five loads of sand placed on her lot and nothing else was done. Emily Marshall gave Colvin $47,200.00, after which he "dug up the ground, put down a couple of 2 x 4's, strung some string around it, but nothing else was done." Similarly, Willie King's parents gave

---

[5]The facts were taken from the published opinion of the Louisiana Supreme Court on review of Colvin's direct appeal. *State v. Colvin*, 85 So. 3d 663, 664-66 (La. 2012); St. Rec. Vol. 5 of 5, La. S. Ct. Opinion, 11-K-1040, 3/13/12.

[6]La. Rev. Stat. Ann. § 37:2175.2(A) provides that "[n]o person shall undertake, offer to undertake, or agree to perform home improvement contracting services unless registered with and approved by the Residential Building Contractors Subcommittee of the State Licensing Board for Contractors as a home improvement contractor."

[7]*See* La. Rev. Stat. § 37:2175.3(A)(1), (A)(4) and (A)(8).

Colvin $43,200.00 in return for which Colvin "placed four stakes and ran string from the four stakes," before disappearing.

Ida Warfield Kirklon paid Colvin a total of $39,400.00 for a few holes dug on her property, "no ribbon, nothing . . . just dug up with holes, that was it." Her loss meant that she had wasted her retirement savings to rebuild a home for herself and her son. As a result, her son developed mental problems, including depression, due to his constant upset that they did not have a house.

On the remaining counts, Alton Joseph made an initial payment of $45,000.00. After his demands, Colvin refunded $5000 to Joseph which he used to buy a new piece of property. He then paid Colvin an additional $18,500.00 for which Colvin laid a foundation slab and a shed. While Joseph waited for his modular home, Colvin also paid his rent for six months until Colvin disappeared altogether with the rest of Joseph's money. Joseph paid $49,000.00 to a new contractor to build a home. After the new contractor placed the weatherboards on the outside, did the plumbing and electrical work, Joseph and his wife had to complete the job. He and his wife moved in on Christmas Day, but they had no electricity or water. They put a mattress in the kitchen and lived in the shell of the house to do the work a little at a time.

Annette Rainey paid Colvin $50,000.00 in Road Home money in September 2007, with the understanding that she would be in her new home by Christmas of that year. Colvin put a foundation on her property but nothing more. At the time of Colvin's sentencing in 2010, Rainey still was not in a new home.

As complaints poured into the Contractor Fraud Unit of the Orleans Parish District Attorney's Office, warrants were issued for Colvin's arrest on November 14, 2008. By that time,

Colvin had returned to Alabama, where local authorities arrested him after receiving copies of the warrants issued in Louisiana. Colvin was then extradited to Louisiana to face the charges.

On November 9, 2009, Colvin withdrew his former pleas and entered pleas of guilty to each of the six counts.[8] At a hearing held on February 12, 2010, the Trial Court sentenced Colvin to serve consecutive sentences of ten (10) years at hard labor on each count with restitution to be paid to the victims.[9]

On direct appeal, Colvin's counsel argued that the sentences were excessive because the Trial Court failed to consider mitigating factors.[10] Counsel also argued that the claim had been preserved for appellate review although no direct objection was made at the sentencing. In its opinion issued April 20, 2011, the Louisiana Fourth Circuit resolved that, although Colvin did not object to the sentences when imposed, the pre-sentencing request for probation preserved his claims for appellate review.[11] In addition, although the Court found that the Trial Court considered all relevant factors, it determined that the sentence imposed was not tailored to Colvin or his crimes, noting that while consecutive sentences adding up to sixty years in prison was excessive, concurrent sentences with only a ten year total term would not be adequate punishment. The Court therefore affirmed the conviction, vacated the sentences, and remanded the matter for resentencing.

---

[8]St. Rec. Vol. 1 of 5, Plea Minutes, 11/9/09; Waiver of Constitutional Rights Plea of Guilty Form, 11/9/09.

[9]St. Rec. Vol. 1 of 5, Sentencing Minutes, 2/12/10; St. Rec. Vol. 2 of 5, Sentencing Transcript, 2/12/10.

[10]St. Rec. Vol. 3 of 5, Appeal Brief, 2010-KA-1092, 9/2/10; Reply Brief, 2010-KA-1092, 1/27/11.

[11]*State v. Colvin*, 65 So. 3d 669 (La. App. 4th Cir. 2011); St. Rec. Vol. 2 of 5, 4th Cir. Opinion, 2010-KA-1092, 4/20/11; St. Rec. Vol. 1 of 5, Memorandum in Support of Probationary Sentence, 2/5/10; Trial Court Order, undated.

The State sought review of this ruling in the Louisiana Supreme Court on May 19, 2011.[12] The Court granted the State's writ application on November 14, 2011, for purposes of briefing and argument.[13] On March 13, 2012, the Louisiana Supreme Court reversed the Louisiana Fourth Circuit and reinstated the original sentences.[14] The Court found no abuse of discretion by the Trial Court and that its reasons for sentencing had been fully articulated. The matter was remanded for execution of the reinstated sentences.

Colvin's application for issuance of a writ of certiorari in the United States Supreme Court was summarily denied by the Court on October 1, 2012.[15] *Colvin v. Louisiana*, __ U.S. __, 133 S. Ct. 274 (2012). His convictions and sentences became final that same day, October 1, 2012, when the application was denied. *Howland v. Quarterman*, 507 F.3d 840, 843 (5th Cir. 2007) ("It is beyond dispute that a state petitioner's criminal conviction is 'final for purposes of AEDPA's one-year limitations period, when his petition for certiorari [is] denied by the Supreme Court,' not when his petition for rehearing is denied or his time to file for rehearing expires." (citing *Giesberg v. Cockrell*, 288 F.3d 268, 271 (5th Cir. 2002)); *Manning v. Epps*, 688 F.3d 177, 182 (5th Cir. 2012); *Medley v. Thaler*, 660 F.3d 833, 834 (5th Cir. 2011); *Hoffman v. State*, 768 So.2d 592 (La.) (finding that the conviction not final until application for writ of certiorari to U.S. Supreme Court is denied), *cert. denied*, 531 U.S. 946 (2000).

---

[12]St. Rec. Vol. 5 of 5, State's La. S. Ct. Writ Application, 11-K-1040, 5/19/11; St. Rec. Vol. 2 of 5, La. S. Ct. Letter, 2011-K-1040, 5/20/11.

[13]*State v. Colvin*, 75 So. 3d 439 (La. 2011); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2011-K-1040; State's La. S. Ct. Writ Application, 11-K-1040, 5/19/11; St. Rec. Vol. 2 of 5, La. S. Ct. Letter, 2011-K-1040, 5/20/11.

[14]*Colvin*, 85 So. 3d at 663; St. Rec. Vol. 5 of 5, La. S. Ct. Order, 11-K-1040, 3/13/12.

[15]St. Rec. Vol. 5 of 5, U.S. S. Ct. Writ Application, dated 6/11/12; St. Rec. Vol. 1 of 5, Letter from the U.S. S. Ct., 10/18/12; Letter from the U.S. S. Ct., 7/6/12.

On February 28, 2013, Colvin, acting on his own behalf, submitted to the Trial Court an application for post-conviction relief raising the following grounds for relief:[16] (1) the evidence was insufficient to support the conviction where the State failed to prove the element of intent to deprive the victims; (2) the Trial Court failed to inform the petitioner of the nature of the offenses to which he was pleading guilty; and (3) he was denied effective assistance of counsel when counsel let him enter the guilty pleas based on insufficient evidence, not informing him of the nature of the charges, failed to argue insufficient evidence and the lack of notice on appeal and on collateral review.

After receiving a response from the State, the Trial Court denied the application on September 9, 2013.[17] Colvin did not seek review of this ruling.

## II. Federal Petition

On March 24, 2014, Colvin through counsel filed a federal petition for habeas corpus relief arguing that his sentences amount to cruel and unusual punishment under the Eighth and Fourteenth Amendments.[18] Colvin contends that the sentences are excessive under the circumstances of his case.

The State filed an answer in opposition to Colvin's petition conceding its timely filing and outlining the exhaustion of state remedies.[19] The State argues that Colvin failed to establish that the Louisiana Supreme Court's ruling on the propriety of his sentences was contrary to or an unreasonable application of Supreme Court law. Specifically, the State argues that Colvin has not established that his sentence was contrary to law or disproportionate to the gravity of the offense.

[16]St. Rec. Vol. 1 of 5, Application for Post-Conviction Relief, 3/7/13 (dated 2/28/13).

[17]St. Rec. Vol. 1 of 5, Trial Court Order, 9/9/13; State's Response, 5/23/13.

[18]Rec. Doc. No. 1, p.2.

[19]Rec. Doc. No. 14.

## III. General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[20] applies to this petition, which was filed by Colvin's counsel on March 24, 2014. The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default." *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes the timeliness of the petition and exhaustion of state remedies on each of the claims. The State also does not raise a procedural default defense and no such defense is apparent from the record. The Court will proceed to address the substance of Colvin's claims.

## IV. Standards of a Merits Review

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).

---

[20]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485 (citing 28 U.S.C. § 2254(d)(1)). The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, __, 131 S. Ct. 770, 787 (2011) and *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)). "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *White*, 134 S. Ct. at 1706 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it

correctly identifies the governing rule but then applies it unreasonably to the facts. *White*, 134 S. Ct. at 1706-07; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id*. "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011).

## V. Claim of Excessive Sentence

Colvin alleges that his sentence is excessive because he was 63 years old with no prior criminal record when he was sentenced. He contends that the six consecutive ten (10) year sentences amount to a death sentence for a man of his age and was imposed to inflict needless pain and suffering. He also argues that he could have paid restitution had he been placed on probation.

He also states that his young children miss him, suggesting apparently that this is because he is serving the sentence rather than probation.[21]

As outlined above, Colvin's counsel raised this issue on appeal to the Louisiana Fourth Circuit. Applying what the Louisiana Supreme Court later called the incorrect standard, the circuit court decreed the six consecutive ten year sentences to be excessive. The Court determined that a concurrent sentence or mix of concurrent and consecutive would be more appropriate, although a term longer than ten years was warranted.

In the last reasoned opinion on the issue, the Louisiana Supreme Court, relying on state sentencing laws, resolved that the Trial Court had considered all relevant factors surrounding Colvin's actions, including the mitigating evidence. The Court resolved that the seriousness of his crimes, including his systematic scheme to prey on hurricane victims, and his less than sincere attempt at acceptance of responsibility warranted the sentence as imposed by the Trial Court.

Under federal habeas review, an excessive sentence claim presents a question of law. *Davis v. Cain*, 44 F. Supp. 2d 792, 798 (E.D. La.1999); *Jones v. Kaylo*, No. 99-0567, 1999 WL 544680, at *1 (E.D. La. Jul. 26, 1999) (Berrigan, J.) ("The question of excessive sentence is purely a question of law. . ."); *see also*, *Copeland v. Tanner*, No. 12-2801, 2013 WL 3776344, at * 12 (E.D. La. Jul. 15, 2013) (Milazzo, J.) (order adopting report and recommendation); *Chatman v. Miller*, No. 05-1481, 2005 WL 3588637, at *5 (E.D. La. Nov. 9, 2005) (McNamara, J.) (order adopting report and recommendation). The Court must therefore determine whether the denial of relief was contrary to, or an unreasonable application of Supreme Court law.

---

[21]He indicates that his children are now thirteen and nine years old, making them only six and two years old when he engaged in the multiple thefts from the unwitting victims knowing that the victims had already suffered catastrophic losses in Hurricane Katrina.

To the extent Colvin challenges the state courts' compliance with Louisiana's sentencing laws and the Louisiana Constitution, his claim is not the concern of federal habeas review. *Butler v. Cain*, 327 F. App'x 455, 457 (5th Cir. 2009). Instead, federal courts afford broad discretion to a state trial court's sentencing decision that falls within the state's statutory limits. *Haynes v. Butler*, 825 F.2d 921, 923-24 (5th Cir. 1987); *Turner v. Cain*, 199 F.3d 437, No. 99-30041, 1999 WL 1067559, at *3 (5th Cir. Oct. 15, 1999) (Table, Text in Westlaw) (finding that the sentence was within Louisiana statutory limits and within trial court's discretion, therefore petitioner failed to state cognizable habeas claim for excessive sentence). As will be discussed, the sentence imposed upon Colvin was clearly within those state statutory limits and was not excessive.

The Constitution prohibits cruel and unusual punishments through the imposition of inherently barbaric punishments under all circumstances. *Graham v. Florida*, 560 U.S. 48, 58-59 (2010) (citing *Hope v. Pelzer*, 536 U.S. 730 (2002)). However, when a sentence is within a state's statutory limits, a federal habeas court will not upset the terms of the sentence unless it is shown to be grossly disproportionate to the gravity of the offense. *See Harmelin v. Michigan*, 501 U.S. 957, 993-95 (1991); *Solem v. Helm*, 463 U.S. 277, 290-91 & n.17 (1983). The concept of proportionality is central to the Eighth Amendment, and embodied in the Constitution's ban on cruel and unusual punishments. *Graham*, 560 U.S. 59 (citing *Weems v. United States*, 217 U.S. 349, 367).

Under Supreme Court law, "when a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality,'" a court then considers (a) the sentences imposed on other criminals in the same jurisdiction; and (b) the sentences imposed for commission of the same offense in other jurisdictions. *Smallwood v. Johnson*, 73 F.3d 1343, 1346-47 (5th Cir. 1996); *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992). If the sentence

is not "grossly disproportionate," in the first instance, the inquiry is finished. *United States v. Gonzales*, 121 F.3d 928 (5th Cir.1997), *cert. denied*, 522 U.S. 1063 (1998). As the Supreme Court has noted, outside the context of capital punishment, successful proportionality challenges are "exceedingly rare", and constitutional violations are sustained in only "extreme" or "extraordinary" cases. *Ewing v. California*, 538 U.S. 11, 23-30 (2003) (citations omitted); *Lockyer v. Andrade*, 538 U.S. 63 (2003). This is not such a case.

Colvin was convicted by his plea of guilty to six counts of theft in excess of $500 in violation of La. Rev. Stat. Ann. § 14:67. At the time, a person convicted under that provision faced imprisonment, with or without hard labor, for not more than ten (10) years or a fine of not more than $3,000.00, or both. La. Rev. Stat. Ann. § 14:67(B)(1) (West 2007-10). Colvin was sentenced within the statutory range to the maximum ten (10) years imprisonment on each count, with the Trial Court directing the sentences to be run consecutively as allowed by state law.

Based on the clear findings made by the Trial Court and confirmed by the Louisiana Supreme Court, the predatory nature of Colvin's actions, the extensive monetary and other tangible losses to the victims, and his lack of true remorse demonstrated the severity of the offense. In other words, this was no mere theft as Colvin has suggested to the various courts. The combined losses ran over $240,000.00, including government funds obtained through the Road Home Program. This aggregate amount was appropriately considered under Louisiana law in determining the grade or severity of the offense. La. Rev. Stat. Ann. § 14:67 (West 2007-10). The record supports the state courts findings that the sentence imposed was warranted by the gravity of Colvin's offenses.

Colvin has not established the disproportionality between the sentence and the offense as required to trigger further scrutiny of his sentence by this federal habeas court. Nevertheless, the

Court notes that the Louisiana courts have imposed the maximum ten (10) year sentence, even for first offenders, under arguably similar circumstances. *See, e.g.*, *State v. Wilson*, 99 So.3d 1067 (La. App. 4th Cir. 2012) (imposing a ten year sentence per count after plea to two counts of theft over $500.00 totaling $280,000.00 ); *State v. Daigle*, 688 So.2d 158 (La. App. 5th Cir. 1997) (imposing a ten year sentence per count of theft over $500.00 not excessive for a corporate accountant who embezzled an estimated aggregate of $600,000, even though he had no prior felony convictions and made partial restitution to the victims).

Colvin has not demonstrated that his sentence was disproportionate to his offense, excessive, or otherwise unconstitutional under the circumstances. The state courts' denial of relief on this issue was not contrary to or an unreasonable application of Supreme Court law. He is not entitled to relief on this issue.

## VI. Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Colvin's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[22]

New Orleans, Louisiana, this 17th day of October, 2014.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

[22] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.